On Rehearing Ex Mero Motu
This court, acting ex mero motu, issued an order dated April 19, 2001, withdrawing its opinion of February 9, 2001. The following opinion is substituted in place of that withdrawn opinion:
Rhonda Libb Mackey ("the mother") and Melvin R. Mackey ("the father") were divorced in 1994. The mother was awarded custody of the parties' two children, and the father was given certain visitation rights. The father was not ordered to pay child support because, at the time of the divorce, he was unemployed. Subsequently, the father filed a petition to modify the divorce judgment, and the parties reached an agreement as to child support. On February 22, 1995, the circuit court ordered the father to pay $186.01 per month *Page 205 
in child support. The court entered a judgment, which states, in pertinent part:
 "[T]he sum of child support shall be modified annually on the anniversary date of this Decree, setting forth any change in the net income of the parties. The parties shall on January 1st of each year exchange income tax information, W-2 forms, and the most recent pay stubs in order that the parties may properly calculate the change in child support pursuant to Rule 32, [Ala. R. Jud. Admin.].
 "The [father's] present child support obligation is based on the income being calculated and imputed at minimum wage. However, immediately upon the [father's] becoming employed, the [father] shall notify the [mother] of his employment status; his then present income; and shall immediately submit this information to the [mother] so that the parties may immediately recalculate the child support based upon Rule 32, [Ala. R. Jud. Admin.]. Should the [father] fail to cooperate by informing the [mother] of his employment within fourteen (14) days of the date of becoming employed, and further fail to cooperate by not delivering to the [mother] confirmation of his income and agreeing to readjust the child support immediately pursuant to Rule 32, by filing the necessary joint petition to modify child support, then and in that event the [father] shall be responsible for all court costs, and attorney's fees incurred by the [mother] in her attempts to secure the readjustment pursuant to the decree."
On July 17, 1998, the mother filed a complaint, alleging that the father was in arrears for past-due support, in the amount of $8,971.81, and asking the court to enter a judgment for her in that amount. She also sought a modification of the child-support order, alleging that the father's income had substantially increased since the date of the last judgment. After conducting a bench trial, the circuit court determined that the father had a child-support arrearage of $4,091.16 and entered a judgment in favor of the mother accordingly. The court also increased the father's monthly child-support obligation to $651 and awarded the mother an attorney fee of $5,275.65. The father appealed.
 I.
The father concedes that he has a child-support arrearage, but he argues that the trial court misapplied the law in determining the amount of the arrearage. We agree.
At trial, both parties acknowledged that they had not fully complied with the terms of the February 22, 1995, judgment modifying the child-support provisions of the divorce judgment. The mother testified that the father had not sent her, in January 1996, 1997, or 1998, his "income tax information, W-2 forms, and . . . most recent pay stubs" so that the parties could properly "calculate the change in child support." She admitted that for the years 1996, 1997, and 1998, she had not always forwarded to the father her financial information, but she stated that she had been waiting for the father to make the first move. The mother conceded that she had never filed a contempt petition based on the father's noncompliance with the terms of the 1995 judgment. The evidence concerning the father's current income, as well as his income for the years 1996, 1997, and 1998, was largely undisputed.
Using the parties' incomes for the years 1996, 1997, and 1998, the trial court determined the father's child-support arrearage by subtracting the amount of child support the father had actually paid for those years from the amount he would have been required to pay if he had complied *Page 206 
with the exchange-of-information and annual-increase provisions of the February 22, 1995, judgment. The trial court erred. The father's child-support arrearage should have been determined by subtracting the amount the father actually paid, from the aggregate amount due according to the February 22, 1995, judgment: $186.01 per month, multiplied by the number of months since the judgment. The trial court had no authority to enter a judgment for the mother based upon an annual "recalculation" of the father's monthly child-support obligation for the years 1996, 1997, and 1998, that never occurred. See Smith v. Rials, 622 So.2d 374
(Ala.Civ.App. 1993).
 "[O]nly the courts have the power to modify child support and . . . agreements not approved by the court have no legal effect. . . .
 "Although the trial court [in its February 22, 1995, judgment] set out a detailed and well-reasoned method for the parties to adjust child support when the [father's] income changes, agreements between the parties have no legal effect unless approved by the court."
Smith v. Rials, 622 So.2d at 375. The trial court's judgment was, in effect, a retroactive modification of child support and was prohibited by Rule 32(A)(3)(a), Ala. R. Jud. Admin. That rule states:
 "The provisions of any judgment respecting child support shall be modified only as to installments accruing after the filing of the petition for modification."
 II.
The father contends that the trial court erred by referring the parties to mediation over his objection. On November 10, 1998, the mother moved the court to refer the parties to mediation. The mother's motion specifically stated that "opposing counsel is opposed to mediation." The trial court determined that the motion was "moot." Later, however, on May 7, 1999, the court directed the parties to mediation.
Rule 2 of the Alabama Civil Court Mediation Rules states:
 "Upon motion of the parties concerned or by suggestion of the court or by agreement of the parties concerned, the court may enter an order directing parties to a pending action to proceed with mediation of one or more disputes in the lawsuit."
The Committee Comment to Rule 2 states that "[p]articipation in the mediation process is strictly voluntary." That rule, however, has been superseded by statute. See Ex parte Kennedy, 656 So.2d 365 (Ala. 1995) (holding that a legislative enactment supersedes a court rule). Section6-6-20, Ala. Code 1975, effective May 17, 1996, provides:
 "(a) For purposes of this section, `mediation' means a process in which a neutral third party assists the parties to a civil action in reaching their own settlement but does not have the authority to force the parties to accept a binding decision.
 "(b) Mediation is mandatory for all parties in the following instances:
"(1) At any time where all parties agree.
 "(2) Upon motion by any party. The party asking for mediation shall pay the costs of mediation, except attorney fees, unless otherwise agreed.
 "(3) In the event no party requests mediation, the trial court may, on its own motion, order mediation. The trial court may allocate the costs of mediation, except attorney fees, among the parties.
 "(c) If any party fails to mediate as required by this section, the court may *Page 207 
apply such sanctions as it deems appropriate pursuant to Rule 37 of the Alabama Rules of Civil Procedure.
 "(d) A court shall not order parties into mediation for resolution of the issues in a petition for an order for protection pursuant to the Protection from Abuse Act, Sections 30-5-1 through 30-5-10 or in any other petition for an order for protection where domestic violence is alleged.
 "(e) In a proceeding concerning the custody or visitation of a child, if an order for protection is in effect or if the court finds that domestic violence has occurred, the court shall not order mediation.
 "(f) A mediator who receives a referral or order from a court to conduct mediation shall screen for the occurrence of domestic or family violence between the parties. Where evidence of domestic violence exists mediation shall occur only if:
 "(1) Mediation is requested by the victim of the alleged domestic or family violence;
 "(2) Mediation is provided by a certified mediator who is trained in domestic and family violence in a specialized manner that protects the safety of the victim; and
 "(3) The victim is permitted to have in attendance at mediation a supporting person of his or her choice, including but not limited to an attorney or advocate.
 "(g) Where a claim of immunity is offered as a defense, the court shall dispose of the immunity issue before any mediation is conducted.
 "(h) A court shall not order parties into mediation in any action involving child support, adult protective services or child protective services wherein the Department of Human Resources is a party to said action."
(Emphasis added.) Because § 6-6-20(b)(2) provides that mediation is mandatory "[u]pon motion by any party," we reject the father's argument that the court erred by referring the parties to mediation over his objection.
 III.
The father argues that the attorney fee of $5,275.65 awarded to the mother was excessive. The mother's attorney testified that he had spent 32.65 hours, billed at his normal rate of $150 per hour, on this case. He also claimed a reimbursement of mediation costs in the amount of $261.15 and a filing fee of $117.
The father insists that, if the trial court had followed Rule 32(A)(3)(a), it would have found a child-support arrearage of only $987, rather than $4,091.16. He maintains that the time spent by the mother's counsel trying to enforce the payment of a larger arrearage was unreasonable, in light of the well-established legal principles involved, and, thus, that the trial court abused its discretion in awarding the fee. We agree.
 "Factors to be considered by the trial court in awarding [legal] fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney."
Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App. 1993). Seegenerally Thomas R. Malia, Annotation, Right to Attorneys' Fees inProceeding, After Absolute Divorce, for Modification of Child Custody orSupport Order, 57 A.L.R. 4th 710 (1987). The evidence presented at trial established that the father's monthly income ($3,166) is about 63 percent of the mother's *Page 208 
($5,047). The mother conceded that, although for three years the father had not complied with the 1995 judgment, she, too, had failed to comply in all respects and had not filed a contempt petition against the father. The result of the litigation — an erroneously large judgment in favor of the mother — is a factor that does not weigh in favor of awarding the large fee. We conclude that the trial court abused its discretion in awarding the mother an attorney fee of $5,275.65. We direct the trial court, on remand, to reconsider the amount of the fee in light of the legal principles discussed herein. Because of the provisions of § 6-6-20(b)(2), the trial court erred by ordering the father to pay the costs of mediation.
The judgment of the circuit court is reversed, and the cause is remanded with directions.
The mother's request for an attorney fee on appeal is denied.
OPINION OF FEBRUARY 9, 2001, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH DIRECTIONS.
Yates, P.J., and Thompson, Pittman, and Murdock, JJ., concur.